GRUMON *against* RAYMOND and BETTS.

To lay a foundation for issuing a search-warrant to search for stolen goods, and to arrest the person suspected of the theft, there must be an oath by the applicant that his goods have been stolen, and that he strongly suspects that they are concealed in a specific place, and that they were stolen by a person distinctly pointed out; and the warrant must describe the goods, designate the suspected place and person, and direct the officer to search such place, and arrest such person, only.

THIS was an action of trespass *vi et armis*, alleging an unlawful arrest and imprisonment of the plaintiff by the defendants.

The cause was tried at *Fairfield, December* term, 1813, before *Reeve, Smith* and *Baldwin,* Js. On the trial the case was as follows. The defendant *Raymond* was a justice of the peace for *Fairfield* county, and the defendant *Betts* was a constable of the town of *Wilton.* On the 1st of *January* 1813, one *Terrel* exhibited to *Raymond,* as a justice of the peace, a complaint in writing, setting forth that on the same day two bags of the value of one dollar, marked A. C. and M. M. were feloniously stolen from the complainant, and that they were somewhere concealed; and praying that a warrant might issue to search for the bags and the felon that had stolen them, &c. The justice thereupon issued a warrant in these words : "To the sheriff of the county of *Fairfield,* or his deputy, or either of the constables of the town of *Wilton, Greeting.* Whereas *Dunning Terrel* of *Wilton, Fairfield* county, has this day, by writing under oath, exhibited to me the subscribing authority, his complaint, that at said *Wilton,* on the 1st of *January* 1813, two bags were feloniously taken and stolen from the complainant, from the house belonging to *A.*

If the preliminary requisites be omitted, or if the warrant be general, the proceeding is *coram non judice,* and the magistrate who issues the warrant, and the officer who executes it, are liable in trespass to the party injured.

and *Z. Raymond* in said *Wilton*, of the value of one dollar, marked A. C. and M. M. and that several persons are suspected of taking said bags, and that they are concealed at *Aaron Hyatt's* in said *Wilton*, or some other place or house in said *Wilton*; and said *Terrel* prays for a warrant to search after and recover said bags, as by complaint appears. These are, therefore, by authority of the State of *Connecticut*, to command you forthwith diligently to search the premises of *Aaron Hyatt* in said *Wilton*, and other suspected places, houses, stores or barns in said *Wilton*, for said bags, and also to search such persons as are suspected; and if you shall find said bags and the person suspected, you are to take said bags, and arrest the person suspected, and him have forthwith before me, the subscribing authority, at my dwelling-house in *Wilton* aforesaid, to be dealt with as the law directs. Dated at *Wilton*, on this 1st day of *January*, 1813. *Zadock Raymond*, Justice of peace." This warrant being put into the hands of *Betts* to serve and return, he searched the store of *Aaron Hyatt*, and found two bags marked M. M. and one marked A. G., and arrested five suspected persons, of whom *Grumon*, the plaintiff, was one, and brought them before justice *Raymond*. The persons arrested demurred to the complaint and warrant; and the justice adjudged the same to be insufficient, and taxed costs against the complainant. There appeared to have been no violence used, the constable having made the arrest by a gentle imposition of hands, and the justice having done nothing more than issue the warrant, and hold the plaintiff to trial on its return. On these facts it was contended, that the warrant was a sufficient justification to *Betts* for what he had done, and that no action would lie against justice *Raymond* for issuing the warrant, and holding the plaintiff to trial thereon. It was further contended by justice *Raymond*, that if he was liable in any form of action, trespass *vi et armis* was not sustainable, but that the action should have been case. But the court, in their charge to the jury, instructed them, that the action of trespass would lie against both of the defendants; and that the warrant was illegal, and afforded no justification either to the justice or the officer; and that they must both be found guilty. The jury accordingly found a verdict for the plaintiff; and the defendants moved for a new trial on

*Hartford,*
June, 1814.

Grumon
*v.*
Raymond.

*Hartford,*
*June, 1814.*

Grumon
*v.*
Raymond.

the ground of a misdirection. The questions arising on this motion were reserved for the opinion of all the Judges.

*Sherwood* and *N. Smith* for the defendant *Raymond,* and *Bissell* for the defendant *Betts,* argued in support of the motion. They contended, 1. That the justice in issuing the warrant, and in rendering judgment, on the return of that warrant, that the complaint was insufficient, acted judicially, and therefore was not liable in any form of action. A magistrate, acting in his judicial capacity, is not liable in a civil action even for corruption, much less for an error in judgment. The issuing of a search-warrant is a subject clearly within the jurisdiction of a justice of the peace. It is his duty, as well as his right, to judge whether upon the facts stated in the complaint a search-warrant ought to issue. 2 *Hale's P. C.* 150. 2 *Hawk. P. C. c.* 13. *s.* 20. 4 *Burn's Just.* 104. 2 *Swift's Syst.* 115, 116. *Frisbie* v. *Butler, Kirb.* 213. *Phelps* v. *Sill,* 1 *Day's Ca.* 315, 329.

2. That though the justice might have erred in issuing the warrant, yet the process was not irregular. It appears from the record of the justice, which makes a part of this case, that there was a complaint exhibited to him in writing ; that this complaint was sworn to by the complainant ; that it alleged a felony to have been committed ; that it specified the property stolen, and the time when, and the place where, it was stolen ; and pointed out the place where the complainant suspected it to be concealed. Here a sufficient foundation was laid to authorize the justice to act in the case.

3. That admitting the process to be irregular, yet as it was issued by competent authority, the *officer* is not liable for executing it. The person making the complaint, and directing the arrest, is alone responsible. 2 *Swift's Syst.* 58, 96. *Parsons* v. *Lloyd,* 3 *Wils.* 345, 6. *Samuel* v. *Payne, Doug.* 360.

It was also stated as one of the points in this case, that the action as against the justice was misconceived ; but this point was not much insisted upon.

*R. M. Sherman,* contra, insisted that the whole proceeding was *coram non judice,* and afforded no protection either to the justice or the officer. He referred to the cases cited in

2 *Wils.* 385, 6. and to the case of *Entick* v. *Carrington & al.* 2 *Wils.* 275.

REEVE, Ch. J. That this warrant was such as no justice ought to have issued will be admitted ; for it is not only a warrant to search for stolen goods supposed to be concealed in a particular place, but it is a warrant to search all suspected places, stores, shops and barns in *Wilton*. Where those suspected places were in *Wilton* is not pointed out, or by whom suspected ; so that all the dwelling-houses and out-houses within the town of *Wilton* were by this warrant made liable to search. The officer also was directed to search suspected persons, and arrest them. By whom they were suspected, whether by the justice, the officer, or complainant, is not mentioned ; so that every citizen of the *United States* within the jurisdiction of the justice to try for theft, was liable to be arrested and carried before the justice for trial. The warrant was this : Search every house, store or barn within the town of *Wilton*, that is suspected of having certain bags concealed in it, said to be stolen, and all persons who are suspected of having stolen them. This is a general search-warrant, which has always been determined to be illegal, not only in cases of searching for stolen goods, but in all other cases.

In all the history of legal proceedings there is no such warrant to be found as to arrest all suspected persons ; for in those general warrants issued by Lord *Halifax*, as secretary of state, in search of libels, the persons to be arrested were pointed out in every warrant ; but it was to ransack a man's house, and to bring all his books, papers, &c. before Lord *Halifax*. A number of suits were brought against those employed by Lord *Halifax* for having executed these warrants ; and in every instance, the plaintiff prevailed, and recovered exemplary damages, by verdicts of the jury ; which verdicts were approbated by the court ; for in all the applications for new trials, they refused them.

It cannot be said, that those cases differed from the present one ; that in this case the justice had jurisdiction over theft, and might issue a proper warrant in the case ; and having issued an improper one, it is only an error in judgment respecting a subject over which he has jurisdiction, and therefore

he cannot be accountable ; but that Lord *Halifax,* as secretary of state, had no jurisdiction over the subject matter. This is not the case. A secretary of state has power to commit for treason and seditious libels upon a proper warrant. *Rex* v. *Kendall* and *Row, Skinn.* 596. S. C. 1 *Salk.* 347. S. C. 1 *Ld. Raym.* 65. *Rex* v. *Wyndham,* 1 *Stra.* 2. *Searche's* case, 1 *Leon.* 70. *pl.* 93. *Yaxley's* case, *Carth.* 291. *Hellyard's* case, 2 *Leon.* 175. *pl.* 213. 2 *Hawk. P. C. c.* 16. *s.* 4. And this doctrine was held to be correct by the court who tried the cases. 2 *Wils.* 288. The ground on which the defendants were held liable was not that the secretary had no jurisdiction in case of libels against the government, but that he had no jurisdiction to issue such a process ; for there must be not only a jurisdiction of the subject matter, but also a jurisdiction of the process. This point was expressly determined in the case of *Martin* v. *Marshall* and *Key, Hob.* 63. In a case tried by the mayor of *York,* the action brought was trespass *vi et armis.* The mayor of *York* was judge of a court of limited jurisdiction, and issued a process which was illegal. Though he had full jurisdiction over the subject matter tried, yet the court held him liable ; for, say the court, the judge had a limited jurisdiction of the subject matter, but had no jurisdiction of such process as was issued. This doctrine was recognized as correct in *Perkin* v. *Proctor & al.* 2 *Wils.* 386. where the court say, there must be jurisdiction of the *process* as well as of the person and cause.

In the principal case, the law knows of no such process as one to arrest all suspected persons, and bring them before a court for trial. It is an idea not to be endured for a moment. It would open a door for the gratification of the most malignant passions, if such process issued by a magistrate should skreen him from damages.

As there is no such process known to the law as the record presents, no person could be arrested under it. The case, then, stands on no better ground than it would if there had been no process, and a verbal direction had been given to arrest all suspected persons, and bring them before the justice. But the magistrate who issued a verbal process to arrest was held liable in trespass ; and this is recognized as good law in 2 *Wils.* 386.

Should it be asked, if a justice issues a warrant which has some defect in it, so that the person arrested cannot be held by it, is the justice liable? I answer, he is not, if he aims at issuing a process which the law recognizes, and fails through some oversight or mistake. If he should attempt to issue an attachment against the goods, estate or person of a debtor, and direct the officer for want of property to take the debtor, and him have before the court &c., and it should be so defective as to abate, the justice would not be liable; for he had jurisdiction over that kind of process which he issued. But if he should direct the officer, for want of property, to take the body of the debtor, and put him in irons, and confine him in *Newgate*, he would be liable; for the law knows of no such process.

Where there is a want of jurisdiction over the person, as in the *Marshalsea* case, 10 *Co.* 70.; or over the cause, as if a justice should try a man for murder; or over the process, as in the case cited from *Hobart*; it is the same as though there was no court. It is *coram non judice*.

From the case of *Entick* v. *Carrington*, 2 *Wils.* 275. we have the opinion of the Chief Justice, that if a warrant which is against law be granted, such as no justice of the peace or other magistrate, high or low, has power to issue, the justice who issues and the officer who executes it are liable in an action of trespass. And no man can hesitate to say, that the law knows of no such warrant as one to arrest suspected persons without naming them, without any complaint, against any person, leaving it to the officer to suspect whom he pleases, or to arrest every person that any other person suspects.

But there is another point of light in which this subject may be viewed. The justice never had any jurisdiction of the subject matter. This purports to be a search-warrant for stolen goods; and the law requires, that before any justice can have power to issue a warrant in such case, certain requisites be complied with.

It is comparatively of modern date that such a warrant could, under any circumstances, issue. In the time of Lord *Coke* it could not be done. 4 *Inst.* 176, 7. But it is now allowed of under certain circumstances. There must be an oath by the applicant that he has had his goods stolen, and strongly suspects that they are concealed in such a place;

<div style="margin">
Hartford,
June, 1814.

Grumon
v.
Raymond.
</div>

and the warrant cannot give a direction to search any other place than the particular place pointed out.

By the complaint on record in writing, it does not appear, that any oath was made, that the bags were stolen ; nor that any place was pointed out where they were concealed ; both of which were necessary, and without them no warrant could issue.

But it is said, that from the warrant under the hand of the justice it appears, that there was an oath that the bags were stolen ; and that they were concealed at *Aaron Hyatt's*, or some other place. It is true, the justice so says ; but it will be remarked, that he says, " as will appear by the complaint ;" and upon examination of that, there is no oath ever made that there was any felony, or any place pointed out where the stolen bags were supposed to be ; so that the justice had no jurisdiction over the case so as to issue a search-warrant.

But admitting that the warrant under the hand of the justice presents to us correctly the facts, it will not help the defendants ; for there is no place pointed out, only at *Aaron Hyatt's or somewhere else*, which is equivalent to saying, that they were somewhere concealed. This would not be sufficient to warrant the issuing of a search-warrant.

If it should be contended, that it would authorize the issuing of a warrant to search *Aaron Hyatt's*, yet it laid no foundation to search any other place, for no other place is mentioned ; and notwithstanding this, the warrant directs all suspected places in *Wilton* to be searched, whether houses, barns or stores ; and under a warrant so issued the plaintiff was arrested.

It is no uncommon thing where there is a court of limited jurisdiction, that their jurisdiction depends upon the existence of certain things, and for want of these the court has no jurisdiction ; and every thing done by the court, where these are wanting, is *coram non judice ;* and the judge and officer are, in such case, liable in trespass to any person who may be arrested by a warrant issuing from the court.

There is a notable case in 2 *Stra.* 993. which fully establishes this doctrine. It is the case of *Smith* v. *Bouchier* and others, *viz.* the vice-chancellor of the university of *Oxford*, the judge, gaoler and party. The question arose upon a

custom, that a plaintiff making oath that he has a personal action against any person within the precincts of the university, and that he believes the defendant will not appear, but run away, the judge may award a warrant to arrest him, and detain him until security is given for answering the complaint.     On the 7th of *August* 1731, the defendant *Bouchier*, having the privilege of the university, made a complaint to the defendant *Shippen*, the vice-chancellor, of a personal action against the plaintiff *Smith*, to his damage 1000*l.*, according to his estimation, and that he suspected that the plaintiff *Smith* would run away.   He took his oath of and upon the truth of the premises ; upon which a warrant was granted to the other defendants, who arrested *Smith*, and kept him in prison eight days for want of sureties.

Here, it will be observed, the requisite was, that the plaintiff should swear to his *belief* that the defendant would run away, whereas the oath was, that he *suspected*.   The court held, that it was necessary, to give jurisdiction to the court, that he should swear to his belief ; and because he did not, all that was done was *coram non judice*, and void.   The vice-chancellor, judge, officer and party were, therefore, all held to be liable in an action of trespass and false imprisonment.

As in that case there was no jurisdiction without an oath that the plaintiff believed ; so in this case there is no jurisdiction without an oath that the bags were concealed in some specific place.   As there was no such oath, the justice had no jurisdiction.   This case is precisely in point.

When this case is viewed in either point of light, the case is with the plaintiff ; for although the justice had jurisdiction of the subject matter of theft, yet he had no jurisdiction over such a process.   It was unknown in law and illegal, and could not be issued by any magistrate high or low, as is expressed by Lord *Camden*, without making that magistrate liable, provided any person was arrested under it.

As to the warrant to search for stolen goods ; this could in no case be issued, unless certain requisites had been observed, which were not observed in this case, and of course the justice had no jurisdiction in the case.

The justice, therefore, was liable to this action, and the officer also who executed it ; for although an officer is not

*Hartford*,
June, 1814.

Grumon
*v.*
Raymond.

always liable when he executes an improper warrant; yet this is in a case where it does not appear on the face of the warrant that it is illegal. It may, for any thing that the officer can discover, be legal; and in such case, it is his duty to obey, and to presume that it is lawful. But an officer is bound to know the law; and when the warrant, on the face of it, appears to be illegal, and he executes it, he is liable to the person arrested. Such was the present case.

This point has for many years, and in many cases, been so decided by the superior court of this state; and the same point was so decided by the circuit court of the *United States,* in the case of the sheriff of *Hartford* county, where a protection was granted by the General Assembly to one *Huntington* to attend upon a petition which he had pending before the General Assembly. In the protection, it did not appear what the nature of that petition was, though it was in fact a petition by him as an insolvent debtor. It was contended, that the Assembly could not constitutionally grant the petition, and of course had no authority to allow a protection in a case over which they had no jurisdiction. The circuit court decided, that the Assembly had power to grant the protection; but they also decided, that supposing they had not, yet it did not appear what the nature of the petition was, on which the protection was granted; and it might be a petition in chancery, which, by the laws of the land, they were a court appointed to decide;(a) and the sheriff was not to make any indecent conjectures that it was in a case where they had no jurisdiction, when it might be allowed in a case where they had jurisdiction. The sheriff, then, having executed a process which he was bound to obey, it was admitted by all, that he could not be liable; and also, if it was one which on the face of it was illegal, his duty would have required that he should not execute it.

I am for these reasons of opinion that there ought not to be a new trial.

In this opinion the other Judges severally concurred.

New trial not to be granted.

(a) The General Assembly of this State has original jurisdiction of suits in equity " where the value of the matter or things in demand exceeds the sum of five thousand three hundred and thirty five dollars." Vide *Stat. tit.* 128. *c.* 1. *s.* 6.   2 *Swift's Syst.* 420.