[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue raised by the motion to dismiss filed by the defendant town of Madison is whether the plaintiffs have standing CT Page 11373 to seek the construction or enforcement of the terms of a gift to the town. The court concludes that the plaintiffs do not. The motion to dismiss, therefore, is granted.
This is a declaratory judgment action involving a deed of trust granting the town of Madison a 74-acre property to be known as Bauer Park for certain charitable purposes. The property was given to Madison by Erwin C. Bauer by deed of transfer dated April 5, 1990. He retained a life interest in a six acre parcel on which stood a farmhouse. The deed provided that "this land shall be used exclusively for the following municipal purposes: a) Parks and Recreation, b) Education, c) Affordable housing, d) Agricultural Pursuits, e) Social Service Uses, f) Any municipal buildings." In November, 1991, a subcommittee formed by the Madison Land Acquisition and Use Committee made a report, released during Bauer's lifetime, which included a recommendation that a portion of the property could be used for affordable housing. A second committee was formed which made its report in September 1997, after Bauer's death, which did not include affordable housing and which the Board of Selectmen voted to accept. This report recommended that the town use the property for programs such as outdoor classrooms and environmental education for adjoining public schools, agricultural use, forestry stewardship and development of a chestnut grove.
The plaintiffs object to the town's plan because it does not include affordable housing and contend that the trust requires that at least a portion of the property be used for affordable housing. Two of the plaintiffs are individuals, Eric Morton, a native of Madison now residing in Branford, and Patricia Homes, a resident of Madison, who claim to qualify for affordable housing, but are unable to locate any in Madison. The third plaintiff, Interfaith Housing Initiative of Madison, Inc., is a non-profit corporation formed by seven Christian Churches and the Jewish Temple, all located in Madison, with the purpose of acquiring or leasing land in Madison for affordable housing. The plaintiffs' amended complaint of April 27, 1998 against the town of Madison seeks a declaratory judgment that the deed requires the development of affordable housing on a portion of the property and that any contrary action by the town is null and void.
"An action for declaratory judgment is a special proceeding. . ." (Internal quotation marks omitted.) Wilson v.Kelley, 224 Conn. 110, 121, 617 A.2d 433 (1992). "The superior court in any action or proceeding may declare rights and other CT Page 11374 legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." General statutes § 52-29(a); see also Practice Book § 17-55 (formerly 390). "The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties . . . and to make certain that the declaration will conclusively settle the whole controversy." (Citations omitted; internal quotation marks omitted.) Mannweiler v. LaFlamme,232 Conn. 27, 33, 653 A.2d 168 (1995).
The town has moved to dismiss the complaint on the ground that none of the plaintiffs have standing to seek the construction or enforcement of the terms of the Bauer Park deed because the gift constitutes a charitable trust or use. Prior to the hearing on the motion, the court permitted the attorney general to intervene as a defendant. The attorney general supports the defendant's motion.
"A motion to dismiss . . . properly attacks the jurisdiction of the court essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). It tests, "inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State,190 Conn. 622, 624, 461 A.2d 991 (1983). "The motion . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citations omitted; internal quotation marks omitted.) Barde v. Board of Trustees, 207 Conn. 59, 62,539 A.2d 1000 (1988).
The defendants claim that the court lacks jurisdiction to hear this matter because the plaintiffs do not have standing. "[S]tanding, like mootness, implicates a court's subject matter jurisdiction, which may be raised at any point in judicial proceedings." Stamford Hospital v. Vega, 236 Conn. 646, 656,674 A.2d 821 (1996). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the CT Page 11375 jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action. . . If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Citations omitted; internal quotation marks omitted.) Tomlinsonv. Board of Education, 226 Conn. 704, 717, 629 A.2d 333 (1993). "Standing is not a technical rule intended to keep aggrieved parties out of court. . . Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . The requirements of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer. . ." (Citations omitted; internal quotation marks omitted.) Gay Lesbian Law Students Assn. v. Board of Trustees,236 Conn. 453, 463-64, 673 A.2d 484
(1996).
The parties do not dispute that the deed executed by Bauer created a charitable trust. "A charitable trust is one which performs some governmental function, such as fostering education, relief of poverty, care of the sick or aged, burial of the dead, or performs some other public task which relieves the governmental burden of the state. Because charitable trusts perform such governmental duties, they are accorded state recognition and protection, and receive the benefit of state and federal tax exemptions as well as numerous other special statutory privileges." Lockwood v. Killian, 172 Conn. 496, 512,375 A.2d 996 (1977); see also Blumenthal v. White,43 Conn. App. 365, 371, 683 A.2d 410 (1996) (deed transferring property to town for purposes of a park creates a charitable use and is treated like a charitable trust); Winchester v. Cox, 129 Conn. 106, 112,26 A.2d 592 (1942) (town's acceptance of lands under an agreement to create and maintain a park creates a charitable use); 2 Restatement (Second) Trusts, § 373 (1959) ("A trust for the erection or maintenance of public buildings, bridges, streets, highways, parks or other public works or for other governmental or municipal purposes is charitable.") Charitable trusts are "purely creatures of statute. Desiring to foster and encourage charitable uses, as in England and many other States in this country, this State enacted a statute in 1684, which first appeared in the Revision of 1702, sanctioning and sustaining such gifts. This is now General Statutes, § [47-2]." Averill v.CT Page 11376Lewis, 106 Conn. 582, 590, 138 A. 815 (1927);
As a general rule, the Attorney General is given exclusive authority to enforce charitable trusts. "The rationale for this rule is well established. In the absence of a limitation on standing to enforce charitable trusts, such trusts could be subject to lawsuits by any disgruntled member of the public."Grabowski v. City of Bristol, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 468889 (June 3, 1997, Holzberg, J.) (19 CONN. L. RPTR. 623). "Connecticut is among the majority of jurisdictions which have codified this common law rule and has entrusted the attorney general with the responsibility and duty to `represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. . .' General Statutes § 3-125."Carl J. Herzog Foundation, Inc. v. University of Bridgeport,243 Conn. 1, 7 n. 3, 699 A.2d 995 (1997); Dailey v. City of New Haven,60 Conn. 314, 325 (1891) (Attorney General is the "guardian of the rights of the public, in respect to public charitable trusts."); Copp v. Barnum, 160 Conn. 557, 276 A.2d 893 (1970) (attorney general is necessary party to action concerning charitable funds).
The rule conferring on the attorney general exclusive standing to enforce charitable trusts is not absolute. "A suit can be maintained for the enforcement of a charitable trust by the Attorney General, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust. . ." 2 Restatement (Second), supra, § 391. In order to maintain such an action, the plaintiff must plead sufficient facts to demonstrate that he is "entitled to receive a benefit under the trust that is not merely the benefit to which members of the public in general are entitled." IVA A. Scott and W. Fratcher, The Law of Trusts (4th Ed. 1989) § 391, p. 367. The "special interest" exception allows beneficiaries with a sufficient special interest in the enforcement of a charitable trust to initiate a suit to enforce the trust. "Those with no `special interest' have no standing to bring an action to enforce the conditions of the gift. These include persons within the general class of beneficiaries of the charitable trust as well as members of the general public." Carl J. Herzog Foundation, Inc.v. University of Bridgeport, supra, 243 Conn. 8 n. 4.
The plaintiffs claim that they have a special interest by virtue of the inclusion of affordable housing in the trust deed CT Page 11377 as a potential use for a portion of the Bauer property. They allege that the Affordable Housing Land Use Appeals Procedure Act of 1990, codified at General Statutes § 8-30g, mandates that ten per cent of housing in all Connecticut towns be "affordable housing" and only 1.77% of the housing in Madison is presently classified as "affordable." They have presented evidence that they claim shows that the only land in Madison suitable for affordable housing, either town-owned or privately-owned, is Bauer Park. General Statutes § 8-30g expresses a public policy that every town in Connecticut has an obligation to accommodate affordable housing. "The `key purpose of § 8-30g
is to encourage and facilitate the much needed development of affordable housing throughout the state.' West HartfordInterfaith Coalition, Inc. v. Town Council, [228 Conn. 498, 511,636 A.2d 1342 (1994)] . The legislative history indicates that the legislature intended to accomplish this goal by creating specific legislation that affects only affordable housing applications, not the overall zoning scheme." Wisniowski v.Planning Commission, 37 Conn. App. 303, 316-17, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995). It does not mandate that each town actually provide such housing, only that it does not use its zoning regulations to exclude developers who wish to construct affordable housing. The pressing need for affordable housing, and the legislative recognition of this need, does not in itself make it imperative for the court, at the request of these plaintiffs, to scrutinize the actions of the town Board of Selectmen in choosing to not set aside a portion of the property for the development of affordable housing.
To have standing to bring this action, the plaintiffs must show that they are special beneficiaries of the trust such that they have a legal interest in the use of the property. They claim it was Bauer's intention to benefit those in need of affordable housing. There is little support for this claim in the language of the trust agreement. The agreement evinces an intent to make a gift of the property to the town for a limited number of municipal purposes, and leaves the selection of the best use to the Board of Selectmen of the town. While it does include affordable housing as a possible use, it does not identify a class of beneficiaries other than residents of the town of Madison.
"It is an essential feature of a public charity that the beneficiaries are uncertain — a class of persons described in some general language, often fluctuating and changing in their CT Page 11378 individual members. If all the recipients of a charity could be designated with certainty at the time of its creation, there would be no necessity for a law of charitable uses different from that which governs all other trusts." (Internal quotation marks omitted.) Averill v. Lewis, supra, 106 Conn. 590. "Since the recipients of this charity are now unascertainable members of the general public, the beneficiary class should be represented and their interests protected by the trustees, or, upon their failure to act, then by the public attorney — formerly the State's Attorney and now the Attorney General." Id., 591.
Even if the deed could be construed to create a limited class of those in need of securing affordable housing, there is nothing to indicate that these specific individuals were intended beneficiaries. The Initiative claims aggrievement because "its efforts to acquire land for the construction of affordable housing have been frustrated by the Madison Board of Selectmen." The Initiative would like to construct affordable housing in Madison, and the town's original plan included the possibility of accommodating its organizational goal, but it remains only a possibility that the Initiative would be selected to develop housing if the town decided to dedicate a portion of the property to that use.
The individual plaintiffs also cannot show that they have an interest in the property any different from that of the general public. They allege that they are aggrieved because they "fruitlessly sought affordable housing in Madison and have been effectively denied it by the town's refusal to allow any portion of Bauer Farm to be used for this purpose." Eric Morton is not a resident of Madison, though he claims that he would like to be. Even the general class of beneficiaries cannot be extended to include all those who would like to be residents of Madison. While Homes is a resident and taxpayer in Madison, her interest in securing affordable housing does not make her any different from other residents and taxpayers in Madison, who may have an interest in seeing the property used in any given manner. A taxpayer, to have standing, must prove that he or she is directly affected by the contested act in a pecuniary manner. Atwood v.Regional School District No. 15, 169 Conn. 613, 617,363 A.2d 1038 (1975).
The plaintiffs do not have standing to bring this declaratory judgment action to challenge the town's proposed use of the charitable trust created by Mr. Bauer. For this reason, the CT Page 11379 defendants' motion to dismiss is granted.
BY THE COURT
Bruce L. LevinJudge of the Superior Court